1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   AMY'S KITCHEN, INC.,                    Case No. 16-cv-03664-JCS

              Plaintiff,

8
         v.                                 **ORDER GRANTING MOTION TO**
9                                           **DISMISS COUNTERCLAIM**

10  BRETT CAMPBELL,                          Re: Dkt. No. 21

              Defendant.

11

## I.    INTRODUCTION

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA").
Plaintiff and Counter-Defendant Amy's Kitchen, Inc. ("Amy's Kitchen"), as administrator of the
Amy's Kitchen, Inc. Employee Benefit Health Plan (the "Plan"), seeks to recover medical
expenses it paid on behalf of Defendant and Counterclaimant Brett Campbell from funds that
Campbell received after settling his claims against the parties responsible for his injuries.
Campbell filed a counterclaim under 29 U.S.C. § 1132(c) seeking damages for Amy's Kitchen's
failure to provide Plan documents upon demand, and Amy's Kitchen now moves to dismiss the
counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court held a
hearing on January 20, 2017.  For the reasons discussed below, Amy's Kitchen's motion is
GRANTED, and Campbell's counterclaim is DISMISSED with leave to amend.[1]

## II.   BACKGROUND

### A.    Allegations of the Complaint

According to Amy's Kitchen, the Plan is a self-funded employee welfare benefit plan
within the meaning of ERISA.  Compl. (dkt. 1) ¶ 1.  Campbell, who was at relevant times covered

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all
purposes pursuant to 28 U.S.C. § 636(c).

by the Plan, was injured in a car accident in October of 2014. *Id.* ¶¶ 12−13. The Plan paid Campbell's medical expenses totaling $241,621.50. *Id.* ¶ 15. Campbell later settled his claims against "the part(ies) responsible for" his injuries and received funds as a result of the settlement. *Id.* ¶ 18. Amy's Kitchen alleges that Campbell is required to reimburse the Plan for his medical expenses from those funds, but has not done so. *Id.* ¶¶ 16−18, 22, 24.[2]

### B. Allegations of the Counterclaim

Campbell alleges that the first request that he reimburse the Plan came from Jamie Calder, a paralegal at a claims recovery firm called the Phia Group. Answer & Counterclaim ("Counterclaim," dkt. 18) ¶ 1.[3] On December 31, 2014, Campbell's representatives promptly responded by email to the Phia Group requesting various categories of documents, including "all insurance which backs the Plan or pays bills submitted under the Plan, whether health insurance, stop-gap or otherwise." *Id.* ¶ 2.

In response, by letter dated January 19, 2015, the Phia Group provided a Form 5500 annual report, which indicated that the funding and benefits structures of the Plan were "insurance." *Id.* ¶ 3 & Ex. A. The Phia Group also provided a document titled "Health Reimbursement Arrangement" and a document titled "Plan Sponsor Acceptance of Responsibility," the latter signed by Carme Lewis as a representative of Amy's Kitchen, the "Plan Sponsor/Plan Administrator." *Id.* ¶¶ 3, 7 & Ex. A. The letter from Calder accompanying those documents stated that the "Health Reimbursement Arrangement" was a "summary plan document," or "SPD," and that in light of precedent holding that language in an SPD controls in the event of a conflict with the actual plan document, Campbell would not need a copy of the plan document itself. *Id.* ¶¶ 9−10 & Ex. A. Calder characterized this response as in accordance with the Plan's responsibilities under 29 U.S.C. § 1024(b)(4). Counterclaim ¶ 8 & Ex. A.

---

[2] Amy's Kitchen originally named Carter & Fulton, P.S., a law firm that represented Campbell, as a second defendant. Amy's Kitchen later dismissed Carter & Fulton based on the parties' agreement that Carter & Fulton is not a necessary party and that it will continue to hold the proceeds of Campbell's settlement in trust pending the outcome of this litigation. *See* Notice of Voluntary Dismissal (dkt. 13).

[3] The paragraph numbering of Campbell's Answer & Counterclaim restarts at 1 at the "Defenses and Counterclaims" section, which begins on page 7 of the document. All citations herein to paragraphs in the Counterclaim refer to paragraphs in that section.

United States District Court
Northern District of California

Campbell's attorney responded to the Phia Group on January 27, 2015, stating that his review of the documents provided did not support the conclusion that the Plan was self-funded or that it had a right of subrogation or reimbursement. *Id.* ¶ 12 & Ex. B. Campbell's attorneys continued to communicate with "Plan representatives"—apparently referring to the Phia Group—over the next several months. *See id.* ¶¶ 14−19. Despite requests, "no insurance contracts, no stop-loss policy(ies), no true SPD and no operative parameters of the stop-loss policy(ies) were revealed or produced." *Id.* ¶ 16. And although Campbell eventually received an actual Plan document, he alleges that "it appeared to be a former version of the Plan," not the version in effect at the relevant time. *Id.* To date, Campbell has not received certain contracts and insurance policies that he believes are relevant, even after making "additional specific requests . . . to Plan representatives and/or directly to Carme Lewis, who is represented to be the Plan Administrator." *Id.* ¶¶ 17−20. Campbell's attorneys also requested "the exact parameters of the stop-loss/reinsurance coverage" in a later teleconference with Lewis and Amy's Kitchen's corporate counsel, without success. *Id.* ¶ 21.

According to Campbell, Amy's Kitchen is subject to daily statutory penalties under 29 U.S.C. § 1132(c) for each document not produced. Counterclaim ¶¶ 22−25.

## C. Arguments

### 1. Motion to Dismiss

Amy's Kitchen moves to dismiss on the grounds that Campbell has not alleged that he made a written request to a plan administrator, that Campbell received all of the documents he was entitled to, and that the insurance documents at issue do not fall within the scope of 29 U.S.C. § 1024(b)(4).

Amy's Kitchen first contends that courts have consistently construed the cause of action for failure to produce documents under 29 U.S.C. § 1132(c)(1) to apply exclusively to claims against plan administrators, and not to other entities involved with a plan. Mot. at 5 (citing, *e.g.*, *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993)). According to Amy's Kitchen, the Phia Group was not a plan administrator, and the only requests involving Carme Lewis are not alleged to have been made in

writing.  *Id.*  Amy's Kitchen also notes that the counterclaim alleges that Campbell received an SPD and a Form 5500 report soon after his request, and argues that production of those documents is sufficient to satisfy 29 U.S.C. § 1024(b)(4).  Mot. at 4.

Turning to the insurance documents, Amy's Kitchen argues that courts construe the universe of documents subject to § 1024(b)(4) narrowly, and that courts have held that stop-loss insurance policies are not a part of an ERISA plan.  *Id.* at 7−8.  Amy's Kitchen therefore contends that it was not required to produce the insurance documents at issue under § 1024(b)(1).

### 2.   Opposition

Campbell submits a declaration by his counsel James Smith with his opposition, attaching nine exhibits purportedly consisting of relevant correspondence and Plan-related documents.  *See generally* Smith Decl. (dkt. 27-1).  Several of the arguments summarized below rely on that evidence.  As discussed in the analysis section below, the Court disregards the declaration and its exhibits for the purpose of the present motion.  This section therefore does not summarize that evidence in detail.

According to Campbell, his requests to the Phia Group were appropriate because Amy's Kitchen had designated the Phia Group as an authorized representative.  Opp'n (dkt. 27) at 2−4, 8−9 (citing Smith Decl. Exs. B−D).  Campbell also argues that the language of the Plan authorizes him to obtain a broader set of documents than what the Plan is required to produce under 29 U.S.C. § 1024(b)(4), including documents related to insurance.  Opp'n at 4, 9 (citing Smith Decl. Ex. B).  Campbell contends that he requested documents from the Phia Group beginning in December of 2014, and from Carme Lewis beginning in October of 2015.  *Id.* at 5−6 (citing Smith Decl. Exs. E−G).  In support of his position that he submitted written requests for documents to the Plan administrator, Campbell relies on the allegation in his counterclaim that requests "were made to Plan representatives and/or Carme Lewis," and on extrinsic evidence.  *Id.* at 6−7 (citing Counterclaim ¶ 20; Smith Decl. Ex. G).  Campbell argues that the responses he received were inadequate, for reasons including initial failure to provide the correct SPD and Plan document, and continued failure to provide insurance documents.  *Id.* at 7−10 (citing Smith Decl. Exs. F, H, I).

Campbell's opposition cites no case law whatsoever in support of his arguments, and only

United States District Court
Northern District of California

1  in two instances references specific allegations of his counterclaim.  *See id.* at 6−7, 8 (citing

2  Counterclaim ¶¶ 20, 26).

3  **3. Reply**

4  Amy's Kitchen argues that consideration of extrinsic evidence on a motion to dismiss

5  under Rule 12(b)(6) is improper, and asks the Court to ignore the evidence submitted with

6  Campbell's opposition, although Amy's Kitchen also argues that aspects of that evidence support

7  its position that the counterclaim should be dismissed.  Reply (dkt. 28) at 6 & n.1.

8  According to Amy's Kitchen, § 1024(b)(4) does not require production of stop-loss

9  insurance documents, and the section of the Plan on which Campbell relies only mirrors the

10  disclosure requirements of the statute.  Reply at 9−12 (citing Smith Decl. Ex. A).  Amy's Kitchen

11  also argues that Campbell mischaracterizes the role of stop-loss insurance.  *Id.* at 12.  Amy's

12  Kitchen contends that exhibits to Smith's declaration indicate that a single document served as

13  both the Plan document and the SPD, and argues that Campbell's counterclaim admits that he

14  received an SPD and a Form 5500 report, which Amy's Kitchen contends is all that § 1204(b)

15  requires.  Reply at 12−13.

16  Amy's Kitchen also argues that the Phia Group cannot be considered the "plan

17  administrator," which is a specifically defined and rigidly construed term under ERISA.  *Id.* at

18  14−16.

19  **III.  ANALYSIS**

20  **A.  Legal Standard**

21  A complaint (or here, counterclaim) may be dismissed for failure to state a claim on which

22  relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose

23  of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N.*

24  *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's

25  burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure

26  states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain

27  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

28  In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the pleading and

takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.   Impropriety of Extrinsic Evidence**

In evaluating a motion to dismiss under Rule 12(b)(6), the court looks to the allegations of the pleading. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("While evidence outside the complaint indicates that Officers Stone and Barnes interviewed additional witnesses, such extraneous evidence should not be considered in ruling on a motion to dismiss."). Although a court may consider such material by treating the motion to dismiss as a motion for summary judgment under Rule 56 and allowing all parties opportunity to present evidence, *see* Fed. R. Civ. P. 12(d), the Court declines to do so here. As neither party cites any authority why the Court should consider the declaration and exhibits submitted by Campbell, for the purpose of the present motion the Court disregards that material in

United States District Court
Northern District of California

1    its entirety, as well as all arguments by both parties based on that material.  The analysis below

2    instead examines the allegations of Campbell's counterclaim and the exhibits attached thereto.

3         **C.  Insufficiency of Campbell's Counterclaim**

4         The administrator of an ERISA plan must "upon written request of any participant or

5    beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual

6    report, any terminal report, the bargaining agreement, trust agreement, contract, or other

7    instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).[4]  Under 29

8    U.S.C. § 1132(c)(1), a court may, in its discretion, find that a plan administrator "who fails or

9    refuses to comply with a request for any information which such administrator is required by this

10    subchapter to furnish to a participant" is liable to the aggrieved participant for up to $100 per day

11    that the information was not produced.  29 U.S.C. § 1132(c)(1).  ERISA defines the

12    "administrator" as:

13           (i) the person specifically so designated by the terms of the
14           instrument under which the plan is operated;

15           (ii) if an administrator is not so designated, the plan sponsor; or

16           (iii) in the case of a plan for which an administrator is not designated
      and a plan sponsor cannot be identified, such other person as the
17           Secretary may by regulation prescribe.

18    29 U.S.C. § 1002(16)(A).

19         Amy's Kitchen is correct that Campbell's counterclaim does not allege that he made any

20    written request, as required by § 1024(b)(4), to Amy's Kitchen—the administrator of the Plan—or

21    to its authorized representative Carme Lewis.  The allegation that certain requests "were made to

22    Plan representatives and/or directly to Carme Lewis, who is represented to be the Plan

23

24    ――――――――――――
     [4] Campbell argues in his opposition that the Plan itself imposed broader document production
25    obligations on Amy's Kitchen beyond the terms of § 1024(b)(4).  *See* Opp'n at 4.  Campbell's
     only stated claim for relief, however, is under § 1132(c), which provides for penalties where an
26    administrator fails to respond to furnish information as "required by this subchapter."  29 U.S.C.
     § 1332(c)(1).  Because Campbell cites no authority for the proposition that penalties under that
27    statute can apply to failure to produce documents as required by the terms of a plan rather than by
     ERISA itself, the Court holds for the purpose of this order that Campbell must show that Amy's
28    Kitchen failed to produce documents under the narrower requirements of § 1024(b)(4) in order to
     proceed on his claim.

United States District Court
Northern District of California

Administrator," Counterclaim ¶ 20, does not specify whether such requests were made in writing, as required by the statute.  Further, it is not clear which requests were made to Lewis as opposed to unspecified "Plan representatives," and there is no basis from the counterclaim to determine whether those "representatives" would be considered the "administrator" under § 1024(b)(4).  The allegation that Campbell later requested information from Lewis during a teleconference plainly does not allege a written request.  *See* Counterclaim ¶ 21.  The question, then, is whether Campbell's written requests for documents from the Phia Group can support a claim even though the Phia Group is not alleged to be the administrator of the Plan.

Amy's Kitchen is also correct that the majority of courts have limited the liability imposed by § 1132(c)(1) to the actual plan administrator.  *See, e.g.*, *Mondry*, 794 F.3d at 794 (holding that a plaintiff could not pursue an ERISA claim for failure to produce documents against a claims administrator, as opposed to the plan administrator).  Most importantly for the present case, although not cited by either party, the Ninth Circuit has followed that path.  *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299−300 (9th Cir. 1989) ("Congress has provided for three classes of persons who may be sued as the plan administrator under section 1132(c).  Because Aetna was not designated as plan administrator in the policy and is not the plan sponsor, it is not liable under the statute.").[5]  The Ninth Circuit reached that conclusion despite the fact that the non-administrator defendant had inaccurately represented itself as the plan administrator.  *See id.* at 297 ("Aetna's claims supervisor . . . stated that '[y]our [plaintiff's counsel's] assumption that Aetna is the plan administrator is correct.'" (alterations in original)).

At least one court, however, has suggested that an administrator can be held liable for another entity's failure to produce documents required by § 1024(b)(4) under an agency theory, although in that case the court determined on summary judgment that the plaintiff had not

---

[5] A handful of circuits have held that entities that are not formally plan administrators can be considered de facto plan administrators for the purpose of liability under § 1132(c)(1).  *See, e.g.*, *Law v. Ernst & Young*, 956 F.2d 364, 374 (1st Cir. 1992).  In light of the Ninth Circuit's holding in *Moran*, however, that out-of-circuit authority is of no use to Campbell in this Court.  *See Rodriguez v. Reliance Standard Ins. Co.*, No. C 03-04189 CRB, 2004 WL 2002438, at *2 (N.D. Cal. Sept. 8, 2004) (holding that the First Circuit's decision in *Law* was contrary to *Moran* and therefore inapplicable).

presented evidence to support such a theory. *See DeBartolo v. Blue Cross Blue Shield of Ill.*, 375 F. Supp. 2d 710, 715 (N.D. Ill. 2005). And in *Lee*, the Second Circuit left open the possibility that a claim could lie if an administrator "delegated" its "disclosure duties" to another party, although the facts of the case before that court did not show such a delegation. *Lee*, 991 F.2d at 1010. Such a claim might be permissible under *Moran* so long as the plaintiff sought to recover from the actual administrator—as is the case here, where Amy's Kitchen, the administrator of the Plan, is the only defendant—as opposed to from the agent or delegate who failed to produce the documents.

The Court declines to resolve that issue on the present motion, because even if such a claim is permissible, Campbell has not plausibly alleged that Amy's Kitchen delegated its document provision responsibilities to the Phia Group, or that the Phia Group otherwise acted as Amy's Kitchen's agent in that regard.[6] The counterclaim's conclusory references to the Phia Group as "Plan representatives," *e.g.*, Counterclaim ¶ 1, are the sort of "labels and conclusions" that are not sufficient under *Iqbal* and *Twombly*. Moreover, the precedent discussed above indicates that the mere fact that an entity was involved in plan-related business is not enough. *See, e.g.*, *Moran*, 872 F.2d at 297, 299–300. Because Campbell has not sufficiently alleged agency or delegation, his counterclaim must be dismissed. If Campbell is aware of facts to support such a relationship between Amy's Kitchen and the Phia Group, he may amend his counterclaim accordingly. If Campbell submitted a written request for documents to Amy's Kitchen itself that was not honored, he may of course also amend to allege that.

The Court also briefly addresses the nature of the documents at issue, because if Amy's Kitchen is correct that they are not the sort of documents that are subject to § 1024(b) and § 1132(c), then amendment would be futile. Amy's Kitchen focuses on insurance-related documents as purportedly not covered by those statutes. The counterclaim, however, suggests that the document initially provided to Campbell was not a "true SPD," that Campbell did not receive

---

[6] Campbell relies primarily on extrinsic evidence submitted with his opposition in arguing that Amy's Kitchen appointed the Phia Group as its designee. *See* Opp'n at 2–4. As discussed above, the Court disregards that extrinsic evidence at the pleading stage.

United States District Court
Northern District of California

an actual "Plan document" until months after he requested it, and that the Plan document he eventually received was not the correct document for the time period at issue. *See* Counterclaim ¶ 16. There is no question that an SPD falls within the scope of § 1024(b)(4), and the requirement to produce "other instruments under which the plan is established or operated," *see* § 1024(b)(4) would seem to include the "Plan document"[7] as well. *See Chaffin v. NiSource, Inc.*, 703 F. Supp. 2d 579, 597 (S.D. W. Va. 2010) (holding that "'instruments under which the plan is established or operated' . . . necessarily would include a copy of the Plan itself"). Because Campbell may be able to proceed at least on a theory that those documents were not timely provided, the Court finds that amendment would not be futile, and declines to resolve the significance of the insurance documents at this time without the benefit meaningful briefing from Campbell—i.e., briefing that cites relevant case law. If Campbell files an amended counterclaim, however, he is encouraged to allege more clearly the documents that he believes he did not receive on a timely basis or in an appropriate version.

## IV.    CONCLUSION

For the reasons discussed above, Amy's Kitchen's motion is GRANTED, and Campbell's counterclaim is DISMISSED with leave to amend. Campbell may file an amended counterclaim addressing the deficiencies discussed above no later than January 30, 2017. In the event that further substantive motions practice is necessary in this action, counsel is admonished that any legal brief that fails to cite and discuss relevant case law will be stricken.

**IT IS SO ORDERED.**

Dated: January 20, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[7] As part of its argument that production of the SPD was sufficient, Amy's Kitchen asserts that a single instrument can serve as both an SPD and the formal plan document. *See* Reply at 13 (citing *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015), as well as out-of-circuit authority). The Ninth Circuit case on which Amy's Kitchen relies, however, declined to resolve that issue, noting that "the SPD is sometimes *argued* to be the plan," that such a result "would seem 'peculiar,'" and that "we need not decide here whether we should treat differently those cases in which the ERISA plan is alleged to have embraced this so-called 'consolidated' approach." *Prichard*, 783 F.3d at 1169 (emphases altered) (quoting *Amara*, 563 U.S. 421, 446 (2011) (Scalia, J., concurring)). Moreover, there is no basis to conclude from the allegations of the counterclaim that the Plan at issue here was in fact the same document as the SPD.

United States District Court
Northern District of California

10